# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ESTEP,** *in her own right and as* | ) | |
| *guardian of CRAIG BAUM, an* | ) | |
| *incompetent PERSON,* | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO. 3:11-207** |
| **v.** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **POLICE OFFICER MACKEY,** | ) | |
| **BOROUGH OF CRESSON, BOROUGH** | ) | |
| **OF PORTAGE, and POLICE OFFICER** | ) | |
| **DONALD WYAR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

## I.    Introduction

Pending before the Court are two motions for summary judgment filed by

Defendants, Police Officer Mackey, Borough of Cresson, Borough of Portage, and Police

Officer Donald Wyar (collectively "Defendants") (ECF No. 74 and 76) pursuant to Rule 56

of the Federal Rules of Civil Procedure.  Having reviewed the parties' briefs and relevant

case law, this Court will grant in part and deny in part Defendants' motions for summary

judgment.  Specifically, the Court will deny the motions as to Plaintiff's excessive use of

force claims, but will grant the motions as to Plaintiff's municipal liability claims.


## II.    Jurisdiction

The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28

U.S.C. §§ 1331 and 1343.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial portion of the events or omissions giving rise to the claims occurred in the Western District of Pennsylvania.

### III.    Background

This case arises from an incident that occurred during the evening of September 20, 2009, and continuing into the early morning hours of September 21, 2009, when Defendant Police Officer Mackey ("Officer Mackey") discharged his Taser, striking Craig Baum ("Baum") one time, causing him to fall and strike his head and sustain traumatic brain injury.  Mary Estep ("Plaintiff"), Baum's guardian, brought suit against Defendants pursuant to 42 U.S.C. § 1983 for personal injuries suffered by Baum resulting from Officer Mackey's discharge of his Taser.

The following facts are not disputed, except where noted.  Defendant Police Officer Donald Wyar ("Officer Wyar") received a phone call from a confidential informant that Baum was purchasing a quantity of heroin in Pittsburgh and driving in a green vehicle.  (ECF No. 78 ¶¶ 3-4).  Plaintiff disputes the reliability of the confidential informant and the substance of the phone call, but Plaintiff's characterization of the informant's phone call is not a material fact for the purposes of the present motions.  (ECF No. 78 ¶¶ 3-4, ECF No. 82 ¶¶ 3-4).[1]  Officer Wyar called Officer Mackey, who was an officer in the Borough of Cresson regarding the information he received about Baum,

---

[1] Officer Wyar testified that he received information that Baum was in a green vehicle traveling from Pittsburgh with heroin.  (ECF No. 80-1 at 5).  Additionally, Officer Wyar testified that he did not recall if he had received any prior information regarding narcotics from the informant, or when he received the information.  (*Id.*).  Officer Wyar testified in his deposition that he did not remember if the informant told him about Ryan Konsavich or any information about other individuals in the car.  (*Id.*).

because he believed Baum was from Cresson Borough. (ECF No. 78 ¶ 6). Officer Mackey did not know Baum, but he knew Ryan Konsavich as a "druggie" who was from Portage Borough. (ECF No. 78 ¶ 7).

Officer Mackey saw Ryan Konsavich with an unidentified male and female in a green car at the Sheetz convenience store in Cresson Borough. (ECF No. 80-2 at 12). Nevertheless, Regina Robine testified that she did not see Officer Mackey at the convenience store. (ECF No. 80-3 at 6-7). It is undisputed that following his observance of Ryan Konsavich with the unknown male and female, Officer Mackey telephoned Officer Wyar to confirm that he had seen Ryan Konsavich in a green car with a male and female, and that the female was driving the car. (ECF No. 78 ¶ 10).

It is undisputed that Officer Wyar later observed the green vehicle swerve and almost hit a road sign, after which he initiated a traffic stop. (ECF No. 78 ¶ 16; ECF No. 82 ¶ 16-17). Officer Wyar activated his lights, after which the vehicle pulled over, and Officer Wyar called the stop into dispatch. (ECF No. 78 ¶ 16; ECF No. 82 ¶ 16-17). Officer Wyar approached the vehicle, identified himself as a police officer, and asked Regina Robine ("Robine"), who was driving the vehicle, to produce her driver's license, registration, and proof of insurance, which she provided. (ECF No. 78 ¶ 17).

The parties disagree as to what occurred next. According to Defendants, while the vehicle was stopped, Officer Wyar had his flashlight out, and while the driver was looking for the requested documents, he observed a small white bag which he believed to be a "stamp bag" of heroin. (ECF No. 80-1 at 11). Defendants state that Officer Wyar returned to his vehicle and contacted dispatch to request assistance, because he intended

to perform a vehicle search based on his observation of the small white bag. (*Id*. at 11-12). Plaintiff contests that Officer Wyar saw a small white bag in the vehicle. (ECF No. 82 ¶¶ 18-19). Officer Wyar testified at his deposition that he did not remember what he saw when he looked inside the vehicle. (ECF No. 80-1 at 11). However, it is uncontested that Officer Mackey responded to the call from the dispatcher for a request for assistance in Borough of Portage. (ECF No. 78 ¶ 20). When Officer Mackey arrived at the scene of the traffic stop, Officer Wyar was preparing a written warning to Regina Robine for a traffic violation. (ECF No. 78 ¶ 23).

It is undisputed that after Officer Wyar advised Ms. Robine that he was giving her a written warning and had her sign a form, he advised her that she was free to go. (ECF No. 82 at ¶¶ 25-29, ECF No. 78 ¶ 25). However, Wyar and Robine then resumed their conversation. (ECF No. 82 at ¶¶ 25-29, ECF No. 78 ¶ 26). As Robine started to walk back to the car, Officer Wyar asked if she had been in Pittsburgh earlier. (ECF No. 78 ¶ 27). Robine became upset and asked what he was talking about. Officer Wyar then asked if she was under the influence of anything, and Robine told him that she had taken Xanax, for which she had a prescription. (ECF No. 78 ¶ 27). After Robine consented to a search of her vehicle, Officer Wyar removed Baum, who was a passenger, from the vehicle, patted him down for officer safety, and placed him in the rear of the police vehicle. (ECF No. 78 ¶ 29). Baum was not placed in handcuffs. (ECF No. 78 ¶ 30). The search of the vehicle revealed a torn stamp bag and a straw used for snorting heroin. (ECF No. 78 ¶ 31).

The parties dispute the following facts. According to Defendants, Baum and Robine admitted to snorting heroin in the car on the way back from Pittsburgh, and Officer Wyar informed Baum that he was under arrest for public intoxication for the use of a controlled substance. (ECF No. 80-2 at 17, ECF No. 80-1 at 17). Officer Wyar searched the vehicle and failed to find as much heroin as he expected based on the report from the confidential informant. (ECF 80-1 at 14-15). Defendants contend that Officer Wyar then went back to the police vehicle and told Baum that he was under arrest. (*Id*. at 15). He then asked Baum to voluntarily consent to a strip search even though "consent may not have been necessary since he was under arrest." (*Id*.). Officer Wyar believed that it would be better to obtain Baum's consent to search, so that there could be no possible basis to suppress the results of the search. (*Id*.). Officer Wyar asked Officer Mackey to conduct the search, and Baum was placed under arrest before Officer Mackey took him to the police station to conduct the search. (*Id*.). However, Baum was not put in handcuffs. (*Id*.). Officer Mackey testified that Baum was not put in handcuffs because the police station where the search was to be conducted was only 30 feet away and Officer Mackey would have had to immediately remove the cuffs in order to conduct the strip search. (ECF No. 80-2 at 17).

Plaintiff asserts that Baum was never placed under arrest. (ECF No. 81 ¶39-41). Plaintiff notes that Baum was never placed in handcuffs. (ECF No. 80-1 at 15, ECF No. 80-2 at 17.). Further, a police report prepared by Officer Wyar following the incident does not state that Baum was arrested. (ECF No. 81-8). Rather, the report states, "[Baum] was

asked to step out of the unit and asked for consent to search him at which time he stated yes." (*Id.* at 3).

It is uncontested that Officer Mackey then advised Baum that he was taking him inside for the strip search. (ECF No. 78 ¶ 43). At that time, he also removed the Taser from his holster and warned Baum that if he ran he would be tased. (ECF No. 78 ¶ 43). Mackey then escorted Baum to the police station with his Taser in his hand. (ECF No. 78 ¶ 43). As Officer Mackey walked Baum to the station, he held onto Baum with his left hand and held his Taser in his right hand, maintaining a grip on Baum's right arm. (ECF No. 78 ¶ 46). As they approach the door to the police station, Officer Mackey switched hands so that he held Baum with his right hand. (ECF No. 78 ¶ 47). He then let go of Baum to open the door of the station, and Baum jerked away and ran. (ECF No. 78 ¶ 47). Baum ran back across Main Street, and Officer Mackey ran after him. (ECF No. 78 ¶ 48). When Officer Mackey reached the middle of Main Street, Baum was approximately six to eight feet ahead of him. (ECF No. 78 ¶ 48). Officer Mackey discharged his Taser into Baum's back. Baum fell to the ground and his head struck the curb. (ECF No. 78 ¶ 48).

## IV.   Standard of Review

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

## V. Discussion

Plaintiff's amended complaint alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution and contains three counts under 42 U.S.C. § 1983. In Count One, Plaintiff alleges that Defendants Mackey and Wyar used excessive force when Officer Wyar shot Baum with a Taser. (ECF No. 57, Am. Compl. ¶¶ 24-32). In Count Two, Plaintiff alleges that Defendant Cresson failed to adequately train Officer Mackey in the use of Tasers, and that Defendant Portage failed to adequately train Officer Wyar to supervise and control officers from other jurisdictions. (*Id*. ¶¶ 34-36). In Count Three, Plaintiff alleges that Defendants Cresson and Portage "failed to supervise police officers in order to prevent use of excessive force on citizens." (*Id*. ¶ 37).

### A. Plaintiff's Claim Against Officer Mackey

Plaintiff contends that Officer Mackey's discharge of his Taser constitutes excessive force in violation of Baum's constitutional rights. (ECF No. 81 at 4). In response, Officer Mackey argues that his decision to fire his Taser to stop Baum, who was fleeing, was objectively reasonable under a totality of the circumstances analysis. (ECF No. 77 at 11). Alternatively, Officer Mackey contends that he is entitled to qualified immunity, because his actions did not violate an established constitutional right. (*Id*. at 18).

### 1. Excessive Force

To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show (1) that a seizure occurred using force, and (2) that the use of force was

objectively unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). In assessing whether an action was reasonable, a court must consider the severity of the crime, whether the suspect posed an immediate threat to public safety, and whether the suspect was resisting or evading arrest. *Woods v. Grant*, 381 F. App'x 144, 146 (3d Cir. 2010); *Graham v. Connor*, 490 U.S. 386, 397 (1989). Determining whether the use of force is reasonable is largely a fact specific inquiry. *See Reiff v. Marks*, Case No. 08-CV-5963, 2011 WL 666139, * 5 (E.D. Pa. 2011). The United States Supreme Court has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." *Graham v. Conner*, 490 U.S. 386, 395-96 (1989).

In assessing the reasonableness of force used, courts evaluate a number of factors based on the circumstances at issue, including: (1) the severity of the crime; (2) whether the suspect posed an imminent threat to the safety of the officer or others; (3) whether the suspect actively resisted or attempted to evade arrest; (4) whether the force used was of such an extent as to lead to injury; (5) the possibility that the suspect was violent or dangerous; (6) the duration of the officer's action; (7) whether the action took place in the context of making an arrest; (8) the possibility that the suspect was armed; and (9) the number of persons with whom the officer had to contend at the time. *Hrezik v. Moyer*, Case No. 2010-CV-04251, 2012 WL 162334, * 6 (E.D. Pa. 2012) (citing *Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997)).

Here, Defendants contend that the use of force was not unreasonable under the circumstances. First, Defendants argue, Plaintiff was arrested for public intoxication for

being under the influence of a controlled substance. (ECF No. 77 at 11). Defendants also contend that the police had "grounds to arrest him on a charge of possession of drug paraphernalia, and were developing probable cause to arrest him on even more serious felony charges." (*Id*.). Additionally, Defendants argue that Officer Mackey knew that Baum was awaiting sentencing on an armed robbery conviction. (*Id*.). In Defendants view, Baum was in custody and was being escorted to the police station when he suddenly broke away from Officer Mackey and began to flee. (*Id*.). Officer Wyar had warned Baum not to flee and about the possible use of a Taser. (*Id*.). Accordingly, Defendants contend that "the amount of force applied by Officer Mackey was proportional to the threat he perceived, and was therefore reasonable." (*Id*.).

On the other hand, Plaintiff argues that Officer Mackey's use of the Taser was an excessive and unreasonable use of force under the circumstances. (ECF No. 81 at 4). Plaintiff contends that Baum was not under arrest when Officer Mackey discharged his Taser. (*Id*. at 6-7). Plaintiff argues that Baum was not placed in handcuffs or taken into police custody and that Baum had only "voluntarily" consented to be searched. (*Id*.). Additionally, Plaintiff argues that Baum did not pose a threat to the officers on the scene. (*Id*. at 5). Importantly, Baum had been frisked by the officers who did not find any weapons, or contraband, on him. (ECF No. 80-2 at 15). Officer Mackey testified at his deposition that Baum "wasn't threatening." (*Id*. at 17). Officer Wyar testified that, if he had believed that Baum presented a threat, he would not have asked Officer Mackey to take Baum into the police station alone. (ECF No. 80-1 at 15). Officer Mackey also testified that his only reason for using the Taser was that Baum was running away. (ECF

No. 80-2 at 19). Further, Plaintiff has submitted an expert report prepared by W. Ken Katsaris, who concluded, "even if [Baum] *was* under arrest, the deployment for an unarmed person suspected of being 'public intoxicated,' is not reasonable . . ." (ECF No. 81-4 at 10) (emphasis in original)).

Evaluating the evidence presented under the totality of the circumstance, and drawing all inferences in favor of Plaintiff, there is evidence from which a reasonable jury could conclude that Officer Mackey's use of the Taser constituted excessive force. *See Reiff*, 2011 WL 666139, * 6 (denying a defendant police officer's motion for summary judgment when numerous material facts were disputed including, whether the use of the Taser took place in the context of making an arrest, the possibility that the plaintiff was armed, and whether the plaintiff was resisting or fleeing). Here, the parties dispute whether the use of the Taser took place in the context of effecting an arrest. Defendants argue that Plaintiff was under arrest and was being taken to the police station for a strip search incident to his arrest.[2] On the other hand, Plaintiff argues that Baum was never placed under arrest, that there was no probable cause to even arrest Baum, and that Baum was simply asked to "voluntarily" consent to a search. Plaintiff contends that Baum's

_____

[2] Defendants also contend that the police had grounds to arrest Baum for possession of drug paraphernalia, that they were developing probable cause to arrest him on charges of possession with intent to deliver, and that Officer Mackey knew that Baum was awaiting sentencing on an armed robbery conviction in Blair County. These contentions, however, are not relevant to the current analysis because Defendants allege that, at the time the police officers were going to perform the search incident to arrest, Baum was only charged with public intoxication. *See Graham*, 490 U.S. at 396 (stating that the severity of the crime at issue is what is considered in the reasonableness analysis).

decision to withdraw his consent to the search should not have resulted in the Officers' use of the Taser against him.

In addition, the parties disagree on whether Baum posed a threat to the safety of the officers or others. Defendants argue that Baum had been convicted of "felony robbery with a threat to inflict serious bodily harm and qualified as a dangerous individual who may have had a weapon" and that he was suspected of additional drug related crimes.[3] However, Plaintiff disputes that Baum was considered by the officers to be a danger to the safety of the officers or others. Plaintiff notes that the officers had frisked him and had found no weapons. Plaintiff also points to Officer Mackey's testimony that he did not consider Baum to be threatening and Officer Wyar's testimony that if he thought Baum was dangerous, he would not have had Officer Mackey escort Baum to the police station alone.

Based on these disputed facts and based on the testimony and evidence proffered by Plaintiff, a jury could conclude that Office Mackey's use of the Taser constituted excessive force under the circumstances. Therefore, Defendant Officer Mackey's motion for summary judgment is denied.

## 2. Qualified Immunity

Officer Mackey also asserts that he is entitled to qualified immunity. (ECF No. 62 at 12). Qualified immunity is an affirmative defense available to government officials sued in their personal capacities, and for which the defendants have the burden of proof.

---

[3] Defendants also contend that Baum was carrying large amounts of heroin when Officer Mackey deployed his Taser. However, Officer Mackey did not know this at the time that he deployed his Taser; therefore, it is irrelevant that Baum was in possession of heroin.

*See Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012). It is intended to "shield government officials performing discretionary functions, including police officers, 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F. 3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An officer is entitled to qualified immunity if he meets at least one of a two prong inquiry." *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013). The first prong asks whether there was a constitutional violation, and the second prong asks whether the constitutional right was clearly established. *See Id.*; *see also Reedy v. Evanson*, 615 F. 3d 197, 223-24 (3d Cir. 2010); s*ee Saucier v. Katz*, 533 U.S. 194, 202 (2001) (the second prong examines whether a reasonable person would know that their conduct was unlawful under the circumstances).

Determining whether a defendant is entitled to qualified immunity is an objective question that is decided as a matter of law. *Reiff*, 2011 WL 666139, at * 5 (citing *Carswell v. Borough of Homestead*, 381 F. 3d 235, 242 (3d Cir. 2004). The Court must look at the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 244 (2009)). Granting summary judgment for qualified immunity is inappropriate, however, if there are disputed facts material to the objective reasonableness of the officer's conduct. *Id.* (stating that the defendant police officer was not entitled to qualified immunity because of the disputed factual issues) (citing *Hall v. Raech*, 677 F. Supp. 2d 784, 799 (E.D. Pa. 2010)).

As previously explained, there are numerous disputed facts central to determining whether Officer Mackey's use of a Taser against Baum constituted excessive force. Accordingly, Officer Mackey is not entitled to qualified immunity at this time.

### B. Plaintiff's Claim Against Officer Wyar

Plaintiff asserts that Officer Wyar created the circumstances resulting in the use of force and that he failed to intervene or to prevent Officer Mackey's use of excessive force. (ECF No. 81 at 8). Defendants contend that Officer Wyar did not have an opportunity to observe or predict the condition complained of and did not have a reasonable or realistic opportunity to intervene. (ECF No. 75 at 15). In the alternative, Defendants argue that Officer Wyar is entitled to qualified immunity. (*Id*.).

### 1. Excessive Use of Force and Failure to Intervene

This Court has previously summarized the relevant law for a claim of an officer's failure to intervene. *See Estep v. Mackey*, No. 3:11-cv-207, 2013 WL 6533350, at *4 (W.D. Pa. Dec. 13, 2013). If an officer fails to intervene and there was a "realistic and reasonable opportunity to intervene," then he may be liable for another officer's constitutional violations. *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2001); *Garbacik v. Janson*, F. App'x 91, 94 (3d Cir. 2004). To determine whether there was a reasonable opportunity to intervene, a court must consider factors such as the "temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, the ability of the non-intervening officer to perceive and/or hear the alleged assault," among others. *Armbruster v. Marguccio*, No. 3:05-cv-344, 2006 WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006).

Defendants argue that Plaintiff has not established a claim against Officer Wyar for failure to intervene, because the officers did not use excessive force against Baum. (ECF No. 75 at 14). Additionally, Defendants argue that Officer Wyar had no "realistic and reasonable opportunity to intervene." (*Id*.). Defendants contend that Baum's movement and Officer Mackey's use of the Taser were sudden and unexpected and that Baum gave no indication that he was going to flee. (*Id*.). Additionally, Defendants contend that "Officer Wyar was distracted by other matters at the scene, such as searching Robine's vehicle and watching for the K9 Unit, when he suddenly heard the popping sound that accompanied the firing of Officer Mackey's [Taser]." (*Id*.).

On the other hand, Plaintiff contends that Officer Wyar was in charge at the scene and that he was aware that Officer Mackey was prepared to fire his Taser in the event that Baum attempted to flee. (ECF No. 81 at 11). Plaintiff argues that, not only did Officer Wyar do nothing to prevent the use of the Taser, but he told Baum that Officer Mackey would deploy his Taser if he ran. (*Id*.).

Based on the totality of the circumstance and drawing all reasonable inferences in favor of Plaintiff, there is evidence from which a reasonable jury could conclude that Baum's right to be free from the unlawful use of excessive force was violated by Officer Wyar and that Officer Wyar failed to intervene to prevent the use of excessive force by Officer Mackey. The Third Circuit has recognized that the direct use of excessive force is not required to impose liability under § 1983. *See Garbacik*, 111 F. App'x at 94. Instead, a supervising officer may be held liable if "he had knowledge of and acquiesced" to the constitutional violation. *Baker v. Monroe Twp.*, 50 F. 3d 1186, 1190-91 (3d Cir. 1995). Thus,

to establish liability for excessive use of force, a plaintiff must prove that the supervising officer had "contemporaneous knowledge of the offending incident" and that the officer's failure to act "could be found to have communicated a message of approval." *Stoneking v. Bradford Area Sch. Dist.*, 882 F. 2d 720, 732 (3d Cir. 2004). However, police officers have a duty to take reasonable steps to protect a victim from another officer's use of excessive force, regardless of rank. *Smith v. Mesinger*, 293 F. 3d 641, 644-45 (3d Cir. 2002).

Here, Plaintiff argues that Officer Wyar asked Baum to voluntarily consent to a search. (ECF No. 81 at 10). Officer Wyar asked Officer Mackey to escort Baum to the police station and did not handcuff Baum or assist Officer Mackey in escorting Baum to the station. Officer Wyar warned Baum that, if he ran, Officer Mackey would deploy his Taser. Officer Wyar was aware that Officer Mackey already had his Taser out when he was escorting Baum to the police station. Based on this evidence, a reasonable jury could conclude that Officer Wyar knew that there was a possibility that Officer Mackey would discharge his Taser against Baum in violation of his constitutional rights. Therefore, Defendant Officer Wyar's motion for summary judgment is denied.

### 2.    Qualified Immunity

As previously explained, granting summary judgment for qualified immunity is inappropriate if there are disputed facts material to the objective reasonableness of the officer's conduct. Because there are disputed facts that are material to determine whether Officer Mackey's conduct was reasonable, and whether Officer Wyar failed to intervene, Officer Wyar is not entitled to qualified immunity at this time.

### C. Plaintiff's Claims Against Borough of Cresson

Plaintiff asserts that the excessive use of force was the result of an unconstitutional policy of the Borough of Cresson and the failure of the Borough of Cresson to adequately train its officers. (ECF No. 81 at 14). Defendants contend that, if this Court finds that Officer Mackey's use of force was objectively reasonable, summary judgment should be granted in favor of the Borough of Cresson without further analysis. (ECF No. 77 at 22). If, however, this Court declines to dismiss the excessive force claim against Officer Mackey, Defendants argue that Plaintiff has not established the requisite "pattern of violations necessary to show the Borough's 'deliberate indifference.'" (*Id.* at 26).

The United States Supreme Court has established that, although local governments cannot be held liable under the theory of respondeat superior, a local government can be held liable under § 1983 for constitutional deprivations pursuant to governmental custom. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 650 (1978). "Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct the municipality was the moving force behind the injury alleged." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citations omitted). The United States Supreme Court and the Third Circuit have held that a municipality may be liable under § 1983 for failure to train its offices in order to prevent mistakes that lead to constitutional violations. *See Berg v. County of Allegheny* 219 F.3d 261, 276-77 (3d Cir. 2000), *City of Caton v. Harris*, 489 U.S. 378, 288 (1989). Failure to train can serve as the basis for municipal liability under § 1983, "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in

contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Berg*, 219 F. 3d, 276 (If the policy or custom at issue does not violate federal law on its face, causation can only be established by "demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.") (citations omitted).

Ordinarily, failure to train can be considered deliberate indifference where the failure has caused a pattern of violations. *Berg*, 219 F. 3d, 276 (citing *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 408-09 (1997)). It is possible, however, to establish a claim for failure to train without a pattern of violations. *Id*. A plaintiff must establish that "the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected deliberate indifference to the obvious consequences of the policymakers' choice." *Id*. (quoting *Bryan County*, 520 U.S. at 409).

Plaintiff alleges that the excessive use of force was the result of an unconstitutional policy of the Borough of Cresson and the failure of the Borough of Cresson to adequately train its officers. (ECF No. 81 at 14). Plaintiff relies on a report prepared by Jeffrey Kopsic, the Chief of Police of Cresson Borough, which stated that the use of the Taser by Officer Mackey was in accordance with the established policy on the use of force of the Cresson Borough Police Department. (*Id*. at 14-15). Plaintiff also relies on the deposition of Chief Kopsic, in which he stated that he was aware of the risk of serious injury when a Taser is used on a person running away. (*Id*. at 15) Plaintiff argues that, "if the

unconstitutional use of force is in accordance with the policy of Cresson Borough, then Cresson Borough is liable for the damages caused by that constitutional violation."(*Id*.).

In the present case, Plaintiff has not produced sufficient evidence to support the failure to train claim against Cresson Borough. Plaintiff has not identified specific training that the Borough should have required to prevent the use of excessive force nor established that such training was not provided. *See Reitz v. County of Bucks*, 125 F. 3d 139, 145 (3d Cir. 1997) (affirming an order granting summary judgment in favor of the defendant where the plaintiffs presented no evidence which a reasonable jury could have concluded that the defendant was "deliberately indifferent to the need to train its prosecutors and that this failure to train was the actual cause of the plaintiffs' injuries") (citations omitted). Plaintiff has provided evidence to maintain a cause of action for excessive force. *See id*. However, Plaintiff has not provided evidence demonstrates that this conduct was the result of Cresson Borough's failure to train Officer Mackey. Additionally, Plaintiff has not provided evidence that similar conduct has occurred in the past, or that the alleged constitutional violation occurred because of insufficient training. Therefore, Defendants' motion for summary judgment as it pertains to Plaintiff's claim for failure to train against Cresson Borough is granted.

### D. Plaintiff's Claims Against Borough of Portage

Plaintiff asserts that the Borough of Portage failed to supervise and train police officers, such as Officer Mackey, who were called into its jurisdiction to assist the Borough of Portage police officers. (ECF No. 81 at 15). Defendants argue that Plaintiff cannot

establish a claim against Portage Borough based on a failure to supervise or train, because there is no evidence that Portage lawmakers were aware of training deficiencies of officers from other municipalities. (ECF No. 75 at 22, 24).

Plaintiff argues that the Portage Borough Chief of Police, Edward Miller, testified that he makes no effort to check the qualifications or training of officers borrowed from other municipalities. (ECF No. 81 at 16). Plaintiff also argues that borrowed police officers are unaware of Portage police policies and procedures. (*Id*.). Plaintiff contends that the Borough of Portage's failure to train and supervise the "borrowed officers" renders it liable for the constitutional violations of those officers. (*Id*.).

As previously stated, in order to maintain an action for failure to train, a plaintiff must establish "deliberate indifference on the part of the municipality to an obvious risk that its untrained officers will commit constitutional violations." *Taylor v. County of Berks*, 2003 WL 22992152, *2 (E.D. Pa. 2003). To maintain an § 1983 claim for failure to train, a plain must show that "a need for training or other corrective action to avoid imminent deprivations [are] so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measure." *Garcia v. County of Bucks, PA*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001). "It is not sufficient to merely show that a particular officer acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury." *Id*. The failure to train must also cause the violation of which the plaintiff complains. *Id*.

Similarly, to establish a claim for failure to supervise, a plaintiff must identify a "specific supervisory practice that the municipality failed to employ, 'contemporaneous

knowledge of the offending incident or knowledge of a prior pattern of similar incidents,' and circumstances under which the inaction of a supervisor could be found to have communicated a message of approval to a subordinate." *Quintana v. City of Philadelphia*, 2011 WL 2937426, * 5 (E.D. Pa. 2011) (citing *C.H. ex rel. Z.H. v. Olivia*, 226 F. 3d 198, 202 (3d Cir. 2000).

In the present case, Plaintiff has not produced sufficient evidence to support the failure to supervise or train claims against the Borough of Portage. Plaintiff has not offered any evidence that the Borough of Portage was aware of any deficiencies in the training of police officers from other municipalities. *See Baker v. Monroe Township*, 50 F. 3d 1186, 1191 (3d Cir. 1995) (granting defendant township's motion for summary judgment on plaintiff's failure to train claims, and stating that it is unreasonable to expect a township to retrain officers from the County prosecutor's office and the Drug Enforcement Agency, and that the plaintiff provided no evidence showing that the township had a reason to think retraining was necessary). Additionally, Plaintiff has not produced any evidence of previous incidents involving police officers from other jurisdictions that would indicate inadequate training in another jurisdiction, or that the "borrowed" officers needed additional supervision. Therefore, Defendants' motion for summary judgment of Plaintiff's claims of failure to supervise and train against the Borough of Portage is granted.

**E. Punitive Damages**

In the present case, Plaintiff contends that punitive damages are appropriate as it applies to the conduct of Officer Mackey and Officer Wyar. (ECF No. 81 at 16). Defendants argue that Plaintiff is not entitled to punitive damages, because Officer Mackey and Officer Wyar did not act with the necessary intent and indifference to support a punitive damages claim. (ECF No. 75 at 20).

Punitive damages are appropriate in a § 1983 action if the defendant's conduct was motivated by "evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Thus, for a § 1983 plaintiff to qualify for punitive damages, "a defendant's conduct must be, at a minimum, reckless and callous-it is not essential that defendants meet the higher standard of intentional or evil motive." *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 433 (E.D. Pa. 2008) (citing *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir.1989) (internal quotations omitted)). A plaintiff may establish reckless indifference by showing that the defendant knew he was acting in violation of federal law. *See Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000).

In the present case, if Plaintiff's allegations are established at trial, a reasonable jury could conclude that the officers' conduct was recklessly or callously indifferent toward Baum's constitutional rights. *See Seals*, 553 F. Supp. 2d at 433 (denying defendant police officer's motion for summary judgment because plaintiffs allegations could establish a successful claim for punitive damages). Therefore, Defendants' motion for summary judgment on the issue of punitive damages is denied at this time.

**VI.	CONCLUSION**

For the reasons stated above, Defendants' motions for summary judgment are granted in part and denied in part.  Defendant's motions for summary judgment regarding Plaintiff's claims against the Defendant police officers are denied.  Defendants' motions for summary judgment regarding Plaintiff's claims for failure to supervise and train against the Borough of Portage and the Borough of Cresson are granted.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ESTEP, *in her own right and* | )     **CIVIL ACTION NO. 3:11-207** |
| *as guardian of CRAIG BAUM, an* | ) |
| *incompetent person,* | )     **JUDGE KIM R. GIBSON** |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| POLICE OFFICER MACKEY, | ) |
| BOROUGH OF CRESSON, BOROUGH | ) |
| OF PORTAGE, and POLICE OFFICER | ) |
| DONALD WYAR, | ) |
| | ) |
| Defendants. | ) |

### ORDER

**AND NOW**, this 31st day of March 2015, upon consideration of the motions for summary judgment pending before the Court (ECF Nos. 74 and 76), and for the reasons explained in the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** as follows:

(1) The motion for summary judgment (ECF No. 74) filed by Defendants Borough of Portage and Police Officer Donald Wyar is **GRANTED** as to the Borough of Portage and **DENIED** as to Officer Wyar. Plaintiff's municipal liability claims against Defendant Borough of Portage are **DISMISSED**.

(2) The motion for summary judgment (ECF No. 76) filed by Defendants Borough of Cresson and Police Officer Mackey is **GRANTED** as to the Borough of Cresson and **DENIED** as to Officer Mackey. Plaintiff's municipal liability claims against Defendant Borough of Cresson are **DISMISSED**.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**