# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARY ESTEP,** *in her own right and as guardian of* **CRAIG BAUM,** *an incompetent person,* | **CIVIL ACTION NO. 3:11-207** |
| | **JUDGE KIM R. GIBSON** |
| **Plaintiff,** | |
| v. | |
| **POLICE OFFICER MACKEY, BOROUGH OF CRESSON, BOROUGH OF PORTAGE, and POLICE OFFICER DONALD WYAR,** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

This matter comes before the Court on remand from the United States Court of Appeals for the Third Circuit. *See Estep v. Mackey*, 2016 WL 574029 (3d Cir. Feb. 12, 2016) (*Estep II*). (ECF No. 94.) The dispute arises from Defendant Mackey's allegedly unconstitutional use of a taser against Craig Baum. Presently before the Court for further consideration is Defendant Officer Mackey's Motion for Summary Judgment. (ECF No. 76.) For the reasons that follow, the Court will **GRANT** Defendant's motion and will therefore **DISMISS** Plaintiff's claims against Officer Mackey.

### II. Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 and 1343. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion

of the events or omissions giving rise to the claims occurred in the Western District of Pennsylvania.

### III. Background

The facts relevant to the instant issue on remand, viewed in the light most favorable to Plaintiff, are as follows.

Plaintiff, Mary Estep, on behalf of Craig Baum, sued Defendant Police Officer Robert Mackey under 42 U.S.C. § 1983, alleging that his use of a taser against Baum constituted excessive force. The facts are unchanged from this Court's Memorandum Opinion and Order dated March 31, 2015. (*See* ECF No. 87.) Those facts that are relevant to the remand order are restated here to provide context for the analysis that follows.

The events in question took place on the evening of September 20, 2009, and continued into the early morning hours of September 21, 2009. Police Officer Donald Wyar received a phone call from a confidential informant that Baum was purchasing a quantity of heroin in Pittsburgh and driving in a green vehicle. (ECF No. 78 ¶¶ 3-4.) Plaintiff disputes the reliability of this confidential informant, but Plaintiff's characterization of the informant's phone call is not a material fact for the purpose of the instant motion. (*Id.*; ECF No. 82 ¶¶ 3-4.) Officer Wyar called Officer Mackey, who was an officer in the Borough of Cresson regarding the information he received about Baum, because he believed Baum was from Cresson Borough. (ECF No. 78 ¶ 6.) Officer Mackey did not know Baum, but he knew Ryan Konsavich as a "druggie" who was from Portage Borough. (*Id.* ¶ 8.)

Officer Mackey saw Ryan Konsavich with an unidentified male and female in a green car at the Sheetz convenience store in Cresson Borough. (ECF No. 80-2 at 12.) Regina Robine

2

testified that she did not see Officer Mackey at the convenience store. (ECF No. 80-3 at 6-7.) It is undisputed, however, that following his observance of Ryan Konsavich with the unknown male and female, Officer Mackey telephoned Officer Wyar to confirm that he had seen Ryan Konsavich in a green car with a male and female, and that the female was driving the car. (ECF No. 78 ¶ 10.)

Officer Wyar later observed the green vehicle swerve and almost hit a road sign, after which he initiated a traffic stop. (*Id.* ¶ 16; ECF No. 82 ¶¶ 16-17.) Officer Wyar activated his lights, after which the vehicle pulled over, and Officer Wyar called the stop into dispatch. (ECF No. 78 ¶ 16; ECF No. 82 ¶¶ 16-17.) Officer Wyar approached the vehicle, identified himself as a police officer, and asked Robine, who had been driving the vehicle, to produce her driver's license, registration, and proof of insurance. Robine provided the requested documentation. (ECF No. 78 ¶ 17.)

The parties disagree as to the events that followed. According to Defendants, while the vehicle was stopped, Officer Wyar had his flashlight out, and while the driver was looking for the requested documents, he observed a white bag which he believed to be a "stamp bag" of heroin. (ECF No. 80-1 at 11.) Defendants state that Officer Wyar returned to his vehicle and contacted dispatch to request assistance, because he intended to perform a vehicle search based on his observation of the small white bag. (*Id.* at 11-12.) Plaintiff contests that Officer Wyar saw a small white bag in the vehicle. (ECF No. 82 ¶¶ 18-19.) Officer Wyar testified at his deposition that he did not remember what he saw when he looked inside the vehicle. (ECF No. 80-1 at 11.) It is undisputed, however, that Officer Mackey responded to the call from the dispatcher for a request for assistance in the Borough of Portage. (ECF No. 78 ¶ 20.) When Officer Mackey

3

arrived at the scene of the traffic stop, Officer Wyar was preparing a written warning to Robine for a traffic violation. (*Id.* ¶ 23.)

Officer Wyar advised Robine that he was giving her a written warning and had her sign a form, after which he advised her that she was free to leave. (ECF No. 82 ¶¶ 25-29; ECF No. 78 ¶ 25.) Officer Wyar and Robine then resumed their conversation. (ECF No. 82 ¶¶ 25-29; ECF No. 78 ¶ 26.) As Robine started to walk back to the car, Officer Wyar asked whether she had been in Pittsburgh earlier. (*Id.* ¶ 27.) Robine became upset and asked what he was talking about. Officer Wyar asked whether she was under the influence of anything, and Robine stated that she had taken Xanax, for which she had a prescription. (*Id.*) After Robine consented to a search of her vehicle, Officer Wyar removed Baum, who was a passenger, from the vehicle, patted him down for officer safety, and placed him in the rear of the police vehicle. (*Id.* ¶ 29.) Baum was not placed in handcuffs. (*Id.* ¶ 30.) The search of the vehicle revealed a torn stamp bag and a straw used for snorting heroin. (*Id.* ¶ 31.)

The events that followed are in dispute. Defendants state that Baum and Robine admitted to snorting heroin in the car on the way back from Pittsburgh, and that Officer Wyar informed Baum that he was under arrest for public intoxication for the use of a controlled substance. (ECF No. 80-2 at 17; ECF No. 80-1 at 15.) Officer Wyar searched the vehicle and failed to find as much heroin as he expected based on the report he had received from the confidential informant. (*Id.* at 14-15.) Defendants state that Officer Wyar then went back to the police vehicle and told Baum that he was under arrest. (*Id.* at 15.) Officer Wyar then asked Baum to voluntarily consent to a strip search even though "consent may not have been necessary since he was under arrest." (*Id.*) Officer Wyar believed it would be better to obtain Baum's consent to

4

search so that there could be no basis to suppress the results of the search. (*Id*.) Officer Wyar asked Officer Mackey to conduct the search, and Baum was placed under arrest before Officer Mackey took him to the police station to conduct the search. (*Id*.) Baum was not, however, placed in handcuffs. (*Id*.) Officer Mackey testified that Baum was not placed into handcuffs because the police station where the search was to be conducted was only 30 feet away and Officer Mackey would have had to immediately remove the handcuffs to conduct the search. (ECF No. 80-2 at 17.)

Plaintiff, on the other hand, asserts that Baum was not placed under arrest. (ECF No. 81 ¶¶ 39-41.) Plaintiff notes that Baum was never placed in handcuffs. (ECF No. 80-1 at 15; ECF No. 80-2 at 17.) Further, a police report prepared by Officer Wyar following the incident does not state that Baum was ever arrested. (ECF No. 81-8.) Rather, the report states, "[Baum] was asked to step out of the unit and asked for consent to search him at which time he stated yes." (*Id*. at 3.)

It is uncontested that Officer Mackey then advised Baum that he was taking him inside for the strip search. (ECF No. 78 ¶ 43.) At that time, Officer Mackey also removed the taser from his holster and warned Baum that if he ran, he would be tased. (*Id*. ¶ 43.) Officer Mackey then escorted Baum to the police station with his taser in his hand. (*Id*.) As Officer Mackey walked Baum to the station, he held onto Baum with his left hand and held his taser in his right hand, maintaining a grip on Baum's right arm. (*Id*. ¶ 46.) As they approached the door to the police station, Officer Mackey switched hands so that he held Baum with his right hand. (*Id*. ¶ 47.) He then let go of Baum to open the door of the station, at which point Baum jerked away and ran. (*Id*.) Baum ran across Main Street, and Officer Mackey ran after him. (*Id*. ¶ 48.) When Officer

5

Mackey reached the middle of Main Street, Baum was approximately six to eight feet ahead of him. (*Id*.) Officer Mackey then discharged his taser into Baum's back. Baum fell to the ground and his head struck the curb. (*Id*.)

Plaintiff Mary Estep filed suit in her own right and as guardian of Baum, asserting a claim against Officer Mackey under 42 U.S.C. § 1983, alleging that his use of the taser against Baum constituted excessive force. Officer Mackey filed a motion for summary judgment on April 14, 2014, arguing that Officer Mackey's use of the taser did not constitute excessive force. (ECF No. 76.) Officer Mackey also argued that he was entitled to qualified immunity on Plaintiff's claims and that summary judgment should therefore be granted on that ground in the alternative. (*Id*.)

This Court denied Officer Mackey's motion for summary judgment by Memorandum Opinion and Order dated March 31, 2015, holding that genuine issues of material fact prevented the Court from holding as a matter of law that Officer Mackey's actions did not constitute excessive force in violation of the Fourth Amendment. (ECF No. 87.) Further, this Court held that these same issues of material fact precluded summary judgment on the issue of qualified immunity as to Officer Mackey. (ECF No. 87.) Officer Mackey filed an interlocutory appeal of this Court's decision, and on February 12, 2016, the United States Court of Appeals for the Third Circuit vacated and remanded this Court's order denying summary judgment on the issue of qualified immunity as to Officer Mackey. *See Estep II*, 2016 WL 574029. The Third Circuit directed this Court on remand to (1) identify with specificity the right at issue that Officer Mackey's use of the taser allegedly violated, and (2) determine whether that right was clearly established at the time Officer Mackey used the taser against Baum. *See id.* at *3.

## IV. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *Melrose, Inc. v. Pittsburgh*, 613 F.S3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n. 6 (3d Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

V.    **Discussion**

The Court here is concerned with Count I of Plaintiff's Amended Complaint, which alleges, pursuant to 42 U.S.C. § 1983, that Defendant Mackey used excessive force when he discharged his taser into Baum's back. (ECF No. 57 ¶¶ 24-32.)

This Court determined in its Memorandum Opinion and Order dated March 31, 2015, that questions of fact precluded granting summary judgment in Officer Mackey's favor on the issues of excessive force and qualified immunity. As to excessive force, this Court identified the following issues of material fact precluding summary judgment: whether the use of the taser took place in the context of effecting an arrest and whether Baum posed a threat to the safety of the officers or others. *See Estep v. Mackey*, 2015 WL 1496578, at *6 (W.D. Pa. March 31, 2015) (***Estep I***). (ECF No. 87.)

Secondly, this Court determined that these same issues of material fact precluded summary judgment in favor of Officer Mackey on the issue of qualified immunity. *See id.* at *6-7. It is this determination that Officer Mackey challenged on appeal (*see* ECF No. 88celote), and that the Third Circuit vacated and remanded for further consideration in this Court. *See Estep II*, 2016 WL 574029.

Qualified immunity protects an official from suit for money damages. It is intended to "shield government officials performing discretionary functions, including police officers, 'from

8

liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "An officer is entitled to qualified immunity if he meets at least one of a two prong inquiry." *Patrick v. Moorman*, 536 Fed. App'x 255, 259 (3d Cir. 2013).

First, the Court must determine whether the official violated a statutory or constitutional right. Next, the Court considers whether that right was "clearly established" at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011); *Kopec*, 361 F.3d at 776 (citing *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). District courts are, however, permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *See id*. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alterations in original). "If no case speaks directly to the legality of the officer's conduct, the challenged conduct [needs] to be such that reasonable officers in the defendant['s] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." *Geist v. Ammary*, 40 F.Supp.3d 467, 485 (E.D. Pa. 2014) (citing *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994)) (internal quotations omitted). The reviewing court must, therefore, determine whether,

9

under the circumstances that the officer in question encountered, a reasonable officer would have understood at that time that his actions were prohibited. "If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002).

The issue of qualified immunity is a question of law, s*ee Reiff v. Marks*, 2011 U.S. Dist. LEXIS 18205, at *16 (E.D. Pa. Feb. 23, 2011), and it should generally be decided as early as possible in the litigation; "[b]ecause qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The Third Circuit cautioned, however, in a case involving an alleged excessive use of force arising out of the use of a taser, that where there are "facts material to the determination of reasonableness that remain in dispute," such questions should be resolved by a jury rather than by the court. *Geist*, 40 F.Supp.3d at 485 (internal quotations omitted); *see also Barton v. Curtis*, 497 F.3d 331, 335 (3d Cir. 2007).

This Court determined in its Memorandum Opinion and Order dated March 31, 2015, that a reasonable jury could come to the conclusion that Officer Mackey's use of the taser constituted excessive force. *See Estep I*, 2015 WL 1496578 at * 6. Accordingly, viewing the facts in the light most favorable to Plaintiff, at the first step of the qualified immunity analysis, the Court holds that a reasonable jury could similarly come to the conclusion that Officer Mackey violated Baum's constitutional right to be free from the use of a taser while not under arrest.

As to the second inquiry of the qualified immunity analysis, the Court cannot conclude that the right at issue was "clearly established" at the time of Officer Mackey's taser use. Thus,

even if at trial the jury determined that a constitutional violation did in fact occur, this Court cannot say that a reasonable officer in Officer Mackey's position would have known "beyond debate" that using his taser on Baum, a suspect who was in flight and who had disobeyed police orders, even if not under arrest, constituted excessive force. *See Brown v. Cwynar*, 484 Fed.Appx. 676, 681 (3d Cir. 2012). For the reasons explained below, the Court therefore holds that Officer Mackey is entitled to qualified immunity on this ground.

The Third Circuit broadly interprets the inquiry of whether the statutory or constitutional right at issue is "clearly established" for purposes of the qualified immunity analysis. *Geist*, 40 F.Supp.3d at 485 (citing *Kopec*, 361 F.3d at 778). Moreover, the case law related to taser use was at the time of the events in question, and continues to be, developing and highly context-dependent.

Courts in this circuit have found in certain instances that an officer's use of a taser was prohibited by "clearly established" case law such that no qualified immunity was available to that officer. These cases, however, arise when the plaintiff's physical condition or surroundings would make it clear to a reasonable officer that the use of a taser might cause serious physical injury or death to that plaintiff. *See, e.g.*, *Martin v. City of Reading*, 118 F.Supp.3d 751, 765-66 (E.D. Pa. 2015) (collecting cases related to excessive force raising out of taser use and noting that, where officer used taser while plaintiff was standing on an elevated portion of a highway, forty feet above a concrete surface, "[t]he focus here is not on the qualitative characteristics of the particular type of weapon [the officer] chose to employ, but whether a reasonable officer would understand that attempting to effect Plaintiff's arrest by using force that carried with it a serious risk of injury or death violated Plaintiff's rights"); *Brown v. Burghart*, 2012 WL 1900603,

at *10-11 (E.D. Pa. May 25, 2012) (holding that the trooper defendant was not entitled to qualified immunity when he used a taser in August of 2008 on the plaintiff who was in the presence of flammable material, creating a risk of physical harm to plaintiff such that a reasonable government official facing those circumstances would have known that his conduct violated federal law).

On the other hand, many Courts have held that the use of a taser to overcome a suspect's resistance may be reasonable. *See Brown*, 484 Fed.Appx. at 681 (observing that at the time of the events in question in that case, "multiple courts of appeals had approved the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders" and that "no decision by the Supreme Court, this Circuit, or a majority of other federal circuits had foreclosed the use of taser guns when suspects resist arrest in an aggressive and combative manner"); *Gruver v. Borough of Carlisle*, 2006 U.S. Dist. LEXIS 31448, at *2, 4 (M.D. Pa. May 19, 2006) (holding that the use of a taser on plaintiff, who appeared intoxicated and was behaving in an unruly manner, was reasonable); *McNeil v. City of Easton*, 694 F.Supp.2d 375, 392-95 (E.D. Pa. 2010) (finding reasonableness when plaintiff likely possessed a weapon and attempted to evade and resist arrest); *McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011); *Woods v. Grant*, 665 F.Supp.2d 438, 446 (D.Del. 2009); *Schumacher v. Halverson*, 467 F.Supp.2d 639, 951-52 (D.Minn. 2006). Further, the courts have so held even when the situations involve minor crimes and unarmed suspects. *McKenney*, 635 F.3d at 360 ("Although the charges were limited to misdemeanors, the officers executing the warrant were not required to let Barnes run free"); *Wargo v. Mun. of Monroeville, PA*, 646 F.Supp.2d 777, 786 (W.D. Pa. 2009) ("Even if a plaintiff is

not armed, it is reasonable for law enforcement to employ multiple rounds of non-lethal force if necessary to effectuate an arrest").

The facts at hand, while unfortunate, do not suggest that Officer Mackey was on notice that his use of a taser carried with it a serious risk of serious injury or death. This case does not, therefore, align with those cases that have held that the use of a taser was prohibited by clearly established law. Baum was not in a physical position that should have alerted Officer Mackey to the fact that his use of the taser may result in serious injury or death, but rather was merely running on a concrete surface. The facts here, when viewed in the light most favorable to Plaintiff, demonstrate that Baum was not cooperating with police orders and was fleeing Officer Mackey after having consented to a strip search. Moreover, the fact that Baum had been warned that he would be tased if he fled also weighs heavily in favor of Officer Mackey's position that he is entitled to qualified immunity. *See Ickes v. Borough of Bedford*, 807 F.Supp.2d 306, 322 (W.D. Pa. 2011).

The Court thus concludes that Officer Mackey's challenged conduct is of a nature such that, even if the jury were to conclude that his actions amounted to a constitutional violation at trial, a reasonable officer in his position "could have believed, in light of what was in the decided case law, that [his] conduct was lawful." *Giuffre*, 31 F.3d at 1255. The Court therefore holds that Officer Mackey is entitled to qualified immunity. Accordingly, the Court grants summary judgment in favor of Officer Mackey on this ground.

**VI. Conclusion**

For the reasons stated above, the Court grants Defendant Officer Mackey's motion for summary judgment. Accordingly, Plaintiff's claims against Officer Mackey are dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ESTEP, *in her own right and as guardian of CRAIG BAUM, an incompetent person,* | ) ) ) ) | CIVIL ACTION NO. 3:11-207 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| POLICE OFFICER MACKEY, BOROUGH OF CRESSON, BOROUGH OF PORTAGE, and POLICE OFFICER DONALD WYAR, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 31st day of March, 2016, upon order of the United States Court of Appeals for the Third Circuit vacating and remanding this Court's former Order denying summary judgment to Defendant Police Officer Mackey (ECF Nos. 87, 94), and upon further consideration of Defendant Police Officer Mackey's motion for summary judgment (ECF No. 76), and for the reasons stated in the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that Officer Mackey's motion is **GRANTED**. Plaintiff's claims against Officer Mackey are **DISMISSED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE